IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JEREMY FORNOFF                                           PLAINTIFF

v.                      CIVIL NO. 17-5117

NANCY A. BERRYHILL, Commissioner
Social Security Administration                             DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Jeremy Fornoff, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for supplemental security income (SSI) benefits under the provisions of Title XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.     Procedural Background:**

Plaintiff protectively filed his current application for SSI on September 29, 2014, alleging an inability to work due to back problems, right knee problems, anger issues and high blood pressure. (Tr. 67). An administrative hearing was held on February 8, 2016, at which Plaintiff appeared with counsel and testified. (Tr. 27-65).

By written decision dated June 17, 2016, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Tr. 12). Specifically, the ALJ found Plaintiff had the following severe impairments: degenerative disc

1

disease of the lumbar and cervical spine. However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 14). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 416.967(b) except that he can occasionally climb, balance, crawl, kneel, stoop, crouch and reach overhead bilaterally.

(Tr. 14). With the help of a vocational expert, the ALJ determined Plaintiff could perform work as a marking clerk, a furniture rental clerk and a toll collector. (Tr. 20).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on May 24, 2017. (Tr. 1-6). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed appeal briefs, and the case is before the undersigned for report and recommendation. (Docs. 11, 14).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.   Evidence Presented:**

At the administrative hearing held before the ALJ on February 8, 2016, Plaintiff, who was forty-one years of age, testified that he obtained an eleventh grade education. (Tr. 31). Plaintiff's past relevant work consists of a composite job as a fork lift operator and a laborer. (Tr. 60-61). Prior to the relevant time period, Plaintiff sought treatment for various impairments to include, but not limited to chronic back pain, neck pain, right knee pain, high blood pressure, and right wrist pain.

2

The medical evidence pertinent to the relevant time period reflects the following. On October 15, 2014, Plaintiff was seen by Dr. William Piechal of the Healing Arts Medical Center. (Tr. 340-344). Plaintiff complained of low back, right knee and right wrist pain. Plaintiff reported gathering fire wood aggravated his problems. Dr. Piechal noted Plaintiff's gait was steady and he ambulated without assistance. After examining Plaintiff, Dr. Piechal assessed Plaintiff with chronic pain syndrome. Trigger point injections were administered.

On November 12, 2014, Plaintiff was seen by Dr. Piechal for a follow-up appointment. (Tr. 431-435). Plaintiff reported an increase in pain due to the cold weather. Plaintiff received trigger point injections.

On December 11, 2014, Plaintiff was seen by Dr. Piechal for a follow-up appointment. (Tr. 426-430). Plaintiff complained of low back pain. Plaintiff also complained of bilateral hip and knee pain and right shoulder pain. Plaintiff also complained of a head cold. Plaintiff received trigger point injections.

On January 9, 2015, Plaintiff was seen by Dr. Piechal for a follow-up appointment. (Tr. 420-425). Plaintiff complained of neck pain, back pain, bilateral hip pain and right knee pain. A musculoskeletal exam was normal with the exception of an abnormal back exam. Plaintiff received four trigger point injections.

On February 11, 2015, Plaintiff was seen by Dr. Piechal for a follow-up appointment. (Tr. 414-419). Plaintiff complained of lower back and right knee pain. A musculoskeletal exam was normal with the exception of an abnormal back exam. Plaintiff received four trigger point injections.

On March 11, 2015, Plaintiff was seen by Dr. Piechal for a follow-up appointment. (Tr. 408-413). Plaintiff was noted to have chronic lower back pain. Plaintiff also complained of left ear congestion. Plaintiff reported no psychiatric problems. A musculoskeletal exam was normal with the exception of an abnormal back exam. Plaintiff received two trigger point injections.

On March 19, 2015, Plaintiff underwent a mental diagnostic evaluation performed by Dr. Gene Chambers. (Tr. 380-383). Plaintiff reported back problems, right knee problems, anger issues and high blood pressure. With respect to psychiatric treatment, Plaintiff reported that he was taking Xanax prescribed by Dr. Piechal. Plaintiff reported that he smoked daily. After performing a mental evaluation, Dr. Chambers assessed Plaintiff with dysthymia. Dr. Chambers noted Plaintiff was prone to down play his emotional issues and endorsed more of his physical limitations. With respect to adaptive functioning, Plaintiff reported he needed help getting into and out of a bathtub because he was afraid of falling. Plaintiff reported that he was able to drive and that he socialized with others but did not do household chores due to his pain. Dr. Chambers opined Plaintiff had mild limitations with communicating and interacting socially; mild to moderate limitations with coping with typical mental/cognitive demands of basic work-like tasks; mild limitations with attending and sustaining concentration; mild limitations with sustaining and completing work-like tasks; and mild limitations with completing work-like tasks in an acceptable time frame.

On April 3, 2015, Dr. Abesie Kelly, a non-examining medical consultant, examined the medical evidence and opined that Plaintiff did not have a severe mental impairment. (Tr. 73-75). On the same date, Dr. Kelly completed a Psychiatric Review Technique form opining that Plaintiff had mild restriction of activities of daily living; mild difficulties in maintaining social

4

functioning; mild difficulties in maintaining concentration, persistence and pace; and no episodes of decompensation, each of an extended duration. (Tr. 73-74). On July 30, 2015, after reviewing the record, Dr. Kevin Santulli affirmed Dr. Kelly's opinion. (Tr. 89-90).

On April 6, 2015, Dr. James Wellons, a non-examining medical consultant, completed a RFC assessment opining that Plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds; could stand and/or walk about six hours in an eight-hour workday; could sit about six hours in an eight-hour workday; could push or pull unlimited, other than as shown for lift and/or carry; and that postural, manipulative, visual, communicative or environmental limitations were not evident. (Tr. 75-77).

On April 8, 2015, Plaintiff was seen by Dr. Piechal for a follow-up appointment. (Tr. 402-407). Plaintiff complained of pain in his neck, back and both knees. (Tr. 402-407). A musculoskeletal exam was normal with the exception of an abnormal back exam. Plaintiff received four trigger point injections.

On May 8, 2015, Plaintiff was seen by Dr. Piechal for a follow-up appointment. (Tr. 396-401). Plaintiff complained of chronic lower back and knee pain. Dr. Piechal noted Plaintiff had increased anxiety and prescribed Xanax. A musculoskeletal exam was normal with the exception of an abnormal back exam. Plaintiff received four trigger point injections.

On June 5, 2015, Plaintiff was seen by Dr. Piechal for a follow-up appointment. (Tr. 391-395, 508-513). Plaintiff reported an increase in his lower back pain. A musculoskeletal exam was normal with the exception of an abnormal back exam. Plaintiff received four trigger point injections.

5

On July 7, 2015, Plaintiff was seen by Dr. Piechal for a follow-up exam. (Tr. 502-507). A musculoskeletal exam was normal with the exception of an abnormal back exam. Plaintiff received four trigger point injections.

On July 24, 2015, Dr. Dan Gardner, a non-examining medical consultant, completed a RFC assessment opining that Plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds; could stand and/or walk about six hours in an eight-hour workday; could sit about six hours in an eight-hour workday; could push or pull unlimited, other than as shown for lift and/or carry; and that postural, manipulative, visual, communicative or environmental limitations were not evident. (Tr. 91-93).

On August 5, 2015, Plaintiff was seen by Dr. Piechal for a follow-up exam. (Tr. 496-501). A musculoskeletal exam was normal with the exception of an abnormal back exam. Plaintiff received four trigger point injections.

On September 1, 2015, Plaintiff was seen by Dr. Piechal for a follow-up appointment. (Tr. 490-495). A musculoskeletal exam was normal with the exception of an abnormal back exam. Plaintiff received four trigger point injections.

On September 29, 2015, Plaintiff was seen by Dr. Piechal for a follow-up appointment. (Tr. 485-489). Plaintiff complained of an increase in his blood pressure. A musculoskeletal exam was normal with the exception of an abnormal back exam. Plaintiff received four trigger point injections.

On October 27, 2015, Plaintiff was seen by Dr. Piechal for a follow-up appointment. (Tr. 478-484). A musculoskeletal exam was normal with the exception of an abnormal back exam. Plaintiff received four trigger point injections.

On November 24, 2015, Plaintiff was seen by Dr. Piechal for a follow-up appointment. (Tr. 472-477). Plaintiff reported an increase in his blood pressure. A musculoskeletal exam was normal with the exception of an abnormal back exam. Plaintiff received four trigger point injections.

On December 22, 2015, Plaintiff was seen by Dr. Piechal for a follow-up appointment. (Tr. 464-471). Plaintiff complained of back and knee pain. A musculoskeletal exam was normal with the exception of an abnormal back exam. Plaintiff received four trigger point injections.

On January 19, 2016, Plaintiff was seen by Dr. Piechal for a follow-up appointment. (Tr. 533-539). A musculoskeletal exam was normal with the exception of an abnormal back exam. Plaintiff received four trigger point injections.

On February 16, 2016, Plaintiff was seen by Dr. Piechal for a follow-up appointment. (Tr. 526-532). Dr. Piechal noted Plaintiff brought disability paperwork with him. Plaintiff complained of an increase in his lower back pain. A musculoskeletal exam was normal with the exception of an abnormal back exam. Plaintiff received four trigger point injections.

On March 28, 2016, Plaintiff underwent a consultative orthopedic examination performed by Dr. Ted Honghiran. (Tr. 541-544). Plaintiff reported that he had been unable to work for the past fourteen years due to chronic pain in his right knee and lower back. Plaintiff reported that he had to use a cane to walk because of severe pain in his back and right knee. Upon physical examination, Dr. Honghiran noted Plaintiff used a cane to walk with his right hand. Plaintiff was noted to walk with a limp in his right leg. Dr. Honghiran noted Plaintiff was able to dress and undress himself and to get on and off of the examination table with no

7

problems. An examination of Plaintiff's lumbar spine revealed limited range of motion of the lumbar spine but Plaintiff could flex to forty-five degrees with no muscle spasms and no severe pain on range of motion. A cervical spine examination was completely normal. An examination of Plaintiff's right knee showed no acute swelling and complete range of motion. Dr. Honghiran noted that there was no evidence of a herniated disc and opined that surgery was not indicated.

### III.     Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § 423(d)(1)(A).

The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. § 416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § 416.920.

**IV.    Discussion:**

Plaintiff argues the following issues on appeal: 1) the ALJ failed to properly evaluate the treating physician's opinion and instead assessed the Plaintiff to have limitations that were based on his own lay interpretation of the medical evidence; and 2) the ALJ committed reversible error when he selected the medical opinions of state agency physicians over the treating doctor who provided consistent opinions regarding Plaintiff's non-exertional impairment.

9

### A. Subjective Complaints and Symptom Evaluation:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors. A review of the record revealed that during the time period in question Plaintiff was able to take care of his personal needs, noting difficulty dressing, bathing and shaving; to prepare a meal; to mow with a riding lawn mower; to take care of his dogs and chickens, with the help of his older children; to drive; and to visit with others. Plaintiff also reported that he helped to take care of his wife who was undergoing chemotherapy for breast cancer. While Plaintiff was noted to use a cane at times, the record failed to show that a cane was prescribed and treatment notes from Dr. Piechal do not indicate that Plaintiff used an assistive device.

With respect to Plaintiff's alleged physical impairments, the record revealed that Plaintiff was treated conservatively and appeared to experience some relief with the use of medication. See Black v. Apfel, 143 F.3d 383, 386 (8th Cir.1998); See Robinson v. Sullivan,

10

956 F.2d 836, 840 (8th Cir. 1992) (course of conservative treatment contradicted claims of disabling pain). While Plaintiff may indeed have an injury in his back and experience some degree of pain, the medical evidence indicates that his condition is not of a disabling nature. See Lawrence v. Chater, 107 F.3d 674, 676 (8th Cir. 1997) (upholding ALJ's determination that claimant was not disabled even though she had in fact sustained a back injury and suffered some degree of pain); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993) (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled).

With regard to Plaintiff's alleged mental impairments, the record failed to demonstrate that Plaintiff sought on-going and consistent treatment from a mental health professional during the relevant time period. See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against plaintiff's claim of disability).

Therefore, although it is clear that Plaintiff suffered with some degree of limitation, he did not establish that he was unable to engage in any gainful activity during the relevant time period. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible for the time period in question.

### B. The ALJ's RFC Determination and Medical Opinions:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005);

11

Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In determining that Plaintiff maintained the RFC to perform light work with limitations, the ALJ considered the medical assessments of the examining and non-examining agency medical consultants; Plaintiff's subjective complaints; and his medical records. The Court notes that in determining Plaintiff's RFC, the ALJ discussed the medical opinions of examining and non-examining medical professionals, and set forth the reasons for the weight given to the opinions. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians")(citations omitted); Prosch v. Apfel, 201 F.3d 1010 at 1012 (the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole). Plaintiff's capacity to perform light work with limitations is also supported by the fact that the medical evidence does not indicate that Plaintiff's examining physicians placed restrictions on his activities that would preclude performing the RFC determined. See Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability). Based on the

record as a whole, the Court finds substantial evidence to support the ALJ's RFC determination for the relevant time period.

### C. Hypothetical Question to the Vocational Expert:

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing work as a marking clerk, a furniture rental clerk and a toll collector. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

### V. Conclusion:

Based on the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 27th day of April 2018.

/s/ *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE